**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TEENA MARIE WADDELL, | CASE NO. 3:13-CV-02518 |
| Plaintiff, | JUDGE HELMICK |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Teena Marie Waddell ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

On October 13, 2009, Plaintiff filed an application for POD and DIB and an application for SSI, alleging a disability onset date of February 1, 2008.  (Transcript ("Tr.") 40.)  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On June 20,

2012, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff was represented by an attorney and testified. (*Id.*) A vocational expert ("VE") also appeared and testified. (*Id.*) On August 10, 2012, the ALJ found that Plaintiff was not disabled. (Tr. 37.) The Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.) On November 13, 2013, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 14, 15.)

Plaintiff asserts the following assignment of error: The ALJ erred in assigning no weight to the opinion of Plaintiff's social worker and in assigning significant weight to the opinion of a state agency reviewing psychologist.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was born in July 1967 and was 40-years-old on the alleged disability onset date. (Tr. 57.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as a small products assembler, appliance assembler, forklift/industrial truck operator, hand packager, and machine tender. (Tr. 56.)

### B.  Medical Evidence

Contrary to this Court's initial order, Plaintiff did not include a Statement of Facts section in her Brief on the Merits, nor did she incorporate any relevant medical evidence in her Argument section.[1] In fact, Plaintiff's Brief includes no indication whatsoever of

---

[1] The Court reminds Plaintiff that the Magistrate Judge's initial order in this case instructs that Plaintiff's Brief shall cite, by exact and specific transcript page

the physical or mental impairments from which Plaintiff allegedly suffers. Accordingly, in summarizing the relevant medical evidence, the Court relies heavily on the facts the Commissioner has provided in her Brief on the Merits.

### 1. Medical Reports

The record includes progress notes from Rodney Fizer, LISW, a licensed social worker, and Fatima Tsalikova, M.D., a treating physician, which cover the period from September 2010 through March 2012. (Tr. 367-370, 373-381, 402, 404, 413-416, 418-419, 440, 444, 446, 449, 451-469, 472-473.)

On September 3, 2010, Mr. Fizer saw Plaintiff for complaints of depressed mood. (Tr. 381.) Plaintiff stated that she did not have a job and had just ended a relationship with a man she had known for seven years. (*Id.*) She denied suicidal ideation or perceptual disturbances. (*Id.*) On September 20, 2010, Mr. Fizer saw Plaintiff for follow-up care, at which time she complained of fatigue, loss of energy, a period of irritable mood, and mood disturbance. (Tr. 379.)

On September 27, 2010, Dr. Tsalikova saw Plaintiff for complaints of depression, hopelessness, anxiety, insomnia, and irritability. (Tr. 375.) A review of systems revealed that Plaintiff was alert and oriented. (*Id.*) Her attention, judgment, and short

---

number, all relevant facts in a "Facts" section. (Doc. No. 6.) Plaintiff has not been excused from complying with this order. The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims. *See Centerior Serv. Co. v. ACME Scrap Iron & Metal, 104 F. Supp.2d 729, 735 (N.D. Ohio 2000)* (Gaughan, J.) (*citing InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)*). The Court expects Plaintiff's counsel to properly set forth all facts relevant to his arguments in future briefs unless otherwise directed by Court order.

3

term and long term memory were adequate; her concentration was good; her thought processes were clear; and her speech was normal. (*Id.*) A psychiatric evaluation showed that Plaintiff's judgment and insight were intact; rate of thoughts was normal; thought content was logical; abstract reasoning was within normal limits; computation was intact for basic mathematical constructs including addition and subtraction; mood was normal; affect was appropriate; associates were within normal limits; and there were no hallucinations, delusions, or psychotic thoughts. (Tr. 375-376.) Plaintiff was diagnosed with bipolar disorder, unspecified. (Tr. 376.)

Mr. Fizer also saw Plaintiff for follow-up care on September 27, 2010. (Tr. 377.) At that time Plaintiff reported that Zoloft had leveled out her moods. (*Id.*) She further reported that she had "worked a little and that made me feel better." (*Id.*) Mr. Fizer's findings were consistent with Dr. Tsalikova's findings. (Tr. 377-378.) Mr. Fizer noted that Plaintiff's judgment for everyday activities and social situations was within normal limits, her insight for her current condition was intact, her mood was normal, and her affect was appropriate. (Tr. 377.)

On October 13, 2010, Mr. Fizer saw Plaintiff for follow-up care, at which time she complained of problems with her daughter, but reported that she had more energy and was "delighted with the changes." (Tr. 373.) Plaintiff noted that she was considering taking a job at Pillsbury and stated that she seemed to have "recovered a sense of balance in her life with the lifting of some depression." (*Id.*) On November 2, 2010, Plaintiff told Mr. Fizer that she was seeking a job and wanted to move to Tennessee to resume living with her boyfriend. (Tr. 370.)

On November 12, 2010, Dr. Tsalikova noted that Plaintiff was doing well on

4

Seroquel. (Tr. 368.) A psychiatric examination revealed that judgment and insight were intact; rate of thoughts was normal; thought content was logical; abstract reasoning was within normal limits; computation was intact for basic mathematical constructs including addition and subtraction; mood was normal; affect was appropriate; associations were within normal limits; and there were no hallucinations, delusions, or psychotic thoughts. (*Id.*)

On November 19, 2010, Mr. Fizer saw Plaintiff for complaints of depression associated with the fact that Plaintiff's daughter was "out of control and still living with her." (Tr. 367.) On December 30, 2010, Plaintiff told Mr. Fizer that she had no luck with her job search but that she was going to watch her niece for $50 per week. (Tr. 402.) On January 10, 2011, Plaintiff told Mr. Fizer that she was doing better with Seroquel at 50 mg. (Tr. 404.)

On February 21, 2011, Plaintiff told Dr. Tsalikova that Seroquel was working. (Tr. 414.) A review of systems revealed that Plaintiff was alert and oriented; her attention, memory, and judgment were adequate; her concentration was good; and her speech was normal. (*Id.*) A psychiatric evaluation showed that Plaintiff's mood and insight were appropriate. (*Id.*) Dr. Tsalikova's diagnosis was depressive disorder. (*Id.*)

On March 22, 2011, Plaintiff told Mr. Fizer that she continued to babysit for one of her nieces. (Tr. 418.) On April 21, 2011, she told Mr. Fizer that she was doing okay with Seroquel and that her mood was stabilizing. (Tr. 419.) She also stated that she was holding her own financially by babysitting for her niece and receiving support from her ex-husband. (*Id.*)

On August 2, 2011, Plaintiff told Mr. Fizer that she was concerned about her

5

brother who had terminal cancer and that she was willing to take care of him. (Tr. 440.) On August 30, 2011, Plaintiff told Mr. Fizer that she cooked for her brother and tried to help him get out of the house. (Tr. 444.) On October 27, 2011, Plaintiff told Mr. Fizer that she was still watching her niece. (Tr. 446.) On November 15, 2011, Mr. Fizer noted that Plaintiff was struggling with the demands of taking care of her niece and her brother's illness. (Tr. 449.) On November 28, 2011, Plaintiff told Mr. Fizer that her brother was now living with her and that she was open to caring for him and his wife. (Tr. 451.)

On December 5, 2011, Mr. Fizer completed a Mental Residual Functional Capacity Assessment. (Tr. 421-432.) Mr. Fizer opined that Plaintiff was moderately limited in the following areas: the ability to understand, remember, and carry out very short and simple instructions; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; and the ability to travel in unfamiliar places or use public transportation. (Tr. 421-422.) He further opined that Plaintiff was markedly limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number

and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriately behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; and the ability to set realistic goals or make plans independently of others. (Tr. 422.)

On January 13, 2012, Plaintiff saw Dr. Tsalikova for follow-up care. (Tr. 456.) A review of systems revealed that Plaintiff was alert and oriented; her attention, memory, and judgment were adequate; her concentration was good; her thought processes were clear; and her speech was normal. (*Id.*) A psychiatric examination revealed that judgment and insight were intact; rate of thoughts was normal; thought content was logical; abstract reasoning was within normal limits; computation was intact for basic mathematical constructs including addition and subtraction; mood was normal; affect was appropriate; associates were within normal limits; and there were no hallucinations, delusions, or psychotic thoughts. (*Id.*)

On February 12, 2012, Mr. Fizer saw Plaintiff for follow-up care, at which time she reported that she was able to care for herself but was upset about not receiving disability. (Tr. 460.) Plaintiff was dealing with her troubled daughter and the chaos that she brought to Plaintiff's life. (*Id.*) Plaintiff was alert and oriented; her attention, memory, and judgment were adequate; her concentration was good; her thought processes were clear; her speech was normal; and her mood and insight were appropriate. (*Id.*)

7

On February 22, 2012, Plaintiff asked Mr. Fizer for a statement in connection with her application for Social Security benefits. (Tr. 464.) Mr. Fizer told Plaintiff that "what SS is asking for mostly leaves me out as they are looking for a medical or vocational expert." (*Id.*) On February 22, March 5, March 12, and March 19, 2012, Mr. Fizer noted that Plaintiff was alert and oriented; her attention, memory, and judgment were adequate; her concentration was good; her thought processes were clear; her speech was normal; and her mood and insight were appropriate. (Tr. 464, 466, 468, 472.)

**2. Agency Reports**

On December 23, 2010, Caroline T. Lewin, Ph.D., a state agency psychological consultant, completed a Psychiatric Review Technique form. (Tr. 388-401.) Dr. Lewin reported that Plaintiff had affective disorders that did not manifest at listing level severity, as they resulted in only mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 398.)

Dr. Lewin also completed a Mental Residual Functional Capacity Assessment based upon her review of Plaintiff's record. (Tr. 384-386.) Dr. Lewin found that Plaintiff had no significant limitations in understanding and memory or in her ability to sustain concentration and persistence. (Tr. 384.) Dr. Lewin opined that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 385.) Dr. Lewin further opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in

the work setting and in her ability to set realistic goals or make plans independently of others. (*Id.*) Dr. Lewin referred to records from Dr. Tsalikova, which showed improvement with counseling and medication, and noted that Dr. Tsalikova assessed adequate memory, good concentration, adequate attention, logical thoughts, ability to do basic computation, and normal mood. (Tr. 386.) Dr. Lewin also considered the fact that Plaintiff was able to do light chores, go shopping, and be a parent. (*Id.*) Dr. Lewin concluded that Plaintiff would be able to cope with most instructions in a routine atmosphere where intensive relating was not required and that she should be able to concentrate as needed. (*Id.*)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

Plaintiff testified that she suffered from COPD, which caused her to lose her breath when performing strenuous activities. (Tr. 72.) She also testified that she had pain in her neck, difficulty focusing and remembering things, depression, and a problem with being around people. (Tr. 73-74, 75.)

Plaintiff lived by herself and was able to take care of her personal needs and chores. (Tr. 75.) She had about three "good days" per week. (*Id.*) She often felt depressed because there was "nothing going right" in her life. (Tr. 76.) She saw a therapist two or three times per month. (*Id.*) She saw her medical doctor five or six times per year. (*Id.*) Plaintiff testified that she watched television during the day and visited her parents about three times per week. (Tr. 78.) She drove her automobile about three times per week. (Tr. 79.)

### 2. Vocational Expert's Hearing Testimony

Lynn Kaufman, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume an individual with the same work history and education as Plaintiff. (Tr. 83.) The individual could occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; push and pull to the same extent using hand or foot controls with not more than occasional, bilateral, overhead reaching; stand or walk about six hours in and eight-hour workday; sit about six hours in an eight-hour workday; and must avoid concentrated exposure to fumes, odor, dust, gases, and poor ventilation. (Tr. 84.) The hypothetical individual could understand and remember simple and some complex instruction; sustain attention to complete repetitive tasks where production quotas are not critical; and tolerate the public, coworkers, and supervisors with limited interpersonal demands in an object-focused and static work setting. (*Id.*) The VE testified that the hypothetical individual could perform such jobs as a packager, sorter, and unskilled clerical office helper. (Tr. 85.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient

must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.

2. Based on the totality of the evidence, the claimant has not engaged in substantial gainful activity since February 1, 2008, the alleged onset date of disability.

3. Based on the objective medical evidence, the claimant has the following severe combination of impairments: degenerative changes of the cervical and lumbar spine, asthma, chronic obstructive pulmonary disease ("COPD"), a bipolar disorder, and an affective disorder.

4. Based on the objective medical evidence, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(b) and 416.967(b) and can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently and push and pull to the same extent using hand and foot controls. She can stand or walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday. She is limited to no more than occasional bilateral overhead reaching. She must avoid concentrated exposure to fumes, odors, dust, gasses, and poor ventilation. Mentally, the claimant retains the capacity to understand and remember simple and some complex instructions and sustain attention to complete repetitive tasks where production quotas are not critical. She can tolerate co-workers, supervisors, and the public with limited interpersonal demands in an object-focused and static work setting.

6. Based on the claimant's residual functional capacity, she cannot perform her past relevant work as actually and generally performed.

7. The claimant was born in July 1967, and was 40-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and can communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform.

11. Because jobs exist in significant numbers in the national economy that the claimant can perform, she has not been under a disability, as defined in the Act, from February 1, 2008, through the date of this decision.

(Tr. 42-59.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that

13

the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignment of Error

In December 2011, Plaintiff's licensed social worker ("LISW"), Mr. Fizer, rendered an opinion regarding Plaintiff's mental residual functional capacity ("RFC"). (Tr. 421-423.) The ALJ gave "no weight" to this opinion, explaining:

> LISWs are not "acceptable medical sources," as defined in 20 CFR 404.1513 and 416.913. Therefore, their opinions are, pursuant to 20 CFR 404.1527 and 416.927, not "medical opinions." Thus, these opinions are considered only to the extent that they help understand how an impairment affects the ability to work under 20 CFR 404.1513(e) and 416.913(e). The LISW's opinions, which are indicative of serious limitation in adaptive, social and occupational functioning, are inconsistent with the totality of the evidence, including the "paragraph B" criteria, as discussed above, which reflects no more than moderate limitations of adaptive, social, and occupational functioning, and could support determinations as to no or only mild limitations of adaptive, occupational, and social functioning. The claimant's LISW is by his own admission not a medical expert (16F/33), which further erodes the credibility and probative value of his opinions in this case. The LISW's opinions are inconsistent with the concurrent treatment notes, which reflect that the claimant's alleged mental symptoms were largely concurrent with acute and chronic situational stressors (Exhibit 16F/9, 13, 15, 18,

14

> 20-21, 23, 25, 27029, 32-33, 35, 36, and 41). Moreover, the medical opinions of the BDD reviewing psychologist, which are indicative of no more than moderate limitation of adaptive, social and occupational functioning, are more consistent with the totality of the evidence and are therefore simply entitled to greater weight under the Regulations than the LISW's non-medical opinions. Accordingly, the opinions of the claimant's LISW from December 2011 are entitled to no weight in this case.

(Tr. 54-55.) Plaintiff maintains that the ALJ erred in his evaluation of Mr. Fizer's opinion.

Social Security Ruling 06-3p explains that opinions and other evidence from medical sources who are not "acceptable medical sources," like licensed social workers, are still relevant to the ALJ's determination of a claimant's RFC:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, *6 (S.S.A. Aug. 9, 2006). Furthermore, Social Security Ruling 06-3p provides that when evaluating opinion evidence from medical sources who are not "acceptable medical sources," certain factors should be considered,[2] such as:

---

[2] Not every factor for weighing evidence will apply in every case. SSR 06-03P, *5 (S.S.A. Aug. 9, 2006).

> - How long the source has known and how frequently the source has seen the individual;
> - How consistent the opinion is with other evidence;
> - The degree to which the source presents relevant evidence to support an opinion;
> - How well the source explains the opinion;
> - Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> - Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

Here, the ALJ explicitly acknowledged Mr. Fizer's relationship with Plaintiff and explained why he rejected Mr. Fizer's opinion regarding Plaintiff's mental RFC. (Tr. 54-55.) The ALJ explained the extent to which the Social Security regulations required him to consider the opinion of Mr. Fizer, a non-treating source, and discussed the inconsistency of Mr. Fizer's opinion with his own treatment notes. (*Id.*) Thus, this Court is able to determine that the ALJ at least considered the relevant evidence from Mr. Fizer in assessing Plaintiff's RFC, but ultimately rejected it. Because Mr. Fizer, a social worker, is not an "acceptable medical source," the ALJ had no burden to provide good reasons for rejecting Mr. Fizer's opinion or elaborate any further than he did about his decision to assign the opinion no weight. Accordingly, the ALJ did not err in assessing Mr. Fizer's opinion.

Plaintiff also argues that the ALJ erred in giving more weight to the opinion of state agency reviewing psychologist Dr. Lewin. According to Plaintiff, "[a]s a non-treating source, opinions by BDD should be given less weight." (Plaintiff's Brief ("Pl.'s Br.") 5.) Plaintiff offers no legal support for her blanket assertion that the ALJ erred in

16

relying on Dr. Lewin's opinion. As a result of failing to explain, develop, or provide an analytical framework for her claim that the ALJ erred in assigning significant weigh to Dr. Lewin's opinion, Plaintiff has waived any argument on this point. See *Rice v. Comm'r of Soc. Sec.,* 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995–996 (6th Cir.1997)). Accordingly, Plaintiff's case does not require remand.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: August 28, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).**